IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HOLLY LOUEN, | ) | 1:04-cv-06556-REC-SMS |
| | ) | |
| Plaintiff, | ) | **INFORMATIONAL ORDER** |
| | ) | **FOLLOWING TELEPHONIC** |
| vs. | ) | **DISCOVERY DISPUTE** |
| | ) | **CONFERENCE; ORDER RE:** |
| FRESNO POLICE OFFICER BRIAN | ) | **MOTIONS FOR PROTECTIVE** |
| TWEDT; THE CITY OF FRESNO, | ) | **ORDERS** |
| CALIFORNIA, | ) | |
| | ) | (Docs. 15, 34) |
| Defendants. | ) | |

The Court sua sponte set a telephonic discovery dispute conference to address both defendant Brian Twedt's motion for a protective order to allow defendant to be present during the deposition of plaintiff and preventing the videotaping of defendant's deposition by plaintiff (Doc. 15), as well as plaintiff's urgent motion for a protective order re: multiple depositions unilaterally noticed by defendant Brian Twedt (Doc. 34). Kevin G. Little, Esq., appeared telephonically on behalf of plaintiff. Gregory L. Myers, Esq., of Myers & Mayfield appeared telephonically on behalf of Police Officer Brian Twedt. James D. Weakley, Esq., of Weakley, Ratliff, Arendt & McGuire, LLP, appeared telephonically on behalf of the City of Fresno.

A.   <u>Defendant Twedt's Motion For Protective Order (Doc. 15):</u>

Defendant's motion came on regularly for hearing on June 24, 2005, but the Court determined an in-chambers conversation with counsel, off the record, would be a more beneficial way of resolving the conflict, particularly in light of the fact the Court had absolutely no independent evidence, separate and apart from the parties' own arguments, that the videotaping of defendant's deposition would be harmful to him in some way.  It was agreed on that date that defendant's counsel would obtain a written statement from defendant's treating psychologist regarding the risks to her patient if Mr. Twedt's deposition was videotaped.  See <u>Fanelli v. Centenary College,</u> 211 FRD 268, 271 (D  NJ 2002).

Thereafter, on or about August 9, 2005, the Court received, directly from Dr. Elizabeth B. Maines, a letter setting forth her opinions why she felt her patient's mental health symptoms would be worsened if he is required to be videotaped during a deposition.  The letter was reviewed *in camera* and will be filed under seal with the Clerk's Office.  However, and without revealing all the contents of the letter, Dr. Maines opined about "Brian's fear that the video would be used for other purposes by individuals who have reportedly exhibited unrelenting harassment of Officer Twedt and his family.  He stated that he is fearful that opposing counsel will utilize 'parts' of his deposition (out of context) to further discredit him and or [sic] place he and his family at risk."

After further informal discussion, this Court informed all counsel, and it is therefore ORDERED, that defendant Twedt's deposition can be videotaped.  However, it is further ORDERED that

2

1  no copies of the videotape may be made by any counsel in this
2  lawsuit, and they are to purchase a copy of the videotaped
3  deposition directly from the professional performing the
4  videotaping at the deposition.  Counsel are not to give their copy
5  of the videotape to their client(s) for personal viewing outside
6  the presence of counsel, and clients are to view the videotaped
7  deposition, if at all, only for purposes of preparation of
8  litigation in this, and only this, action.  Counsel, may, however,
9  give the videotape to any retained experts in this lawsuit for
10 review.  At the conclusion of this action, all copies of the
11 videotaped deposition are to be destroyed.  A VIOLATION OF THIS
12 PROTECTIVE ORDER SHALL RESULT IN AN IMPOSITION OF SANCTIONS.
13        The setting and taking of the deposition of defendant
14 Twedt shall have priority over any other depositions set after
15 September 15, 2005, the date of this informal discovery dispute
16 conference.
17        At the in-chambers meeting with counsel, it was also
18 agreed that plaintiff can be present at defendant's deposition <u>as
19 long as</u> she can be placed in a position that she can hear the
20 proceedings but is not visible to defendant and vice versa.
21   B.    <u>Plaintiff's Urgent Motion For Protective Order</u>
22         <u>Re: Multiple Depositions Unilaterally Noticed</u>
23         <u>By Defendant Brian Twedt (Doc. 34)</u>:
24        Simply put, this dispute surrounds defendant Twedt's
25 allegedly setting of a number of depositions without date
26 concurrence by plaintiff's counsel and/or counsel for the City of
27 Fresno, Mr. Weakley.  Mr. Meyers argued that he and his staff
28 attempted on a number of occasions to get date agreements from Mr.

3

Little's office.  Mr. Little claimed that he and/or members of his law office communicated on several occasions that he, Mr. Little, had serious health problems, including being hospitalized at one point in New York, and that going ahead with the scheduling of depositions was wholly inappropriate.  In fact, at least one deposition did take place, even with the knowledge that this motion had been filed.  Mr. Meyers made it clear that it was his opinion Mr. Little should have someone in his law office available to attend depositions in his/Little's stead.  Mr. Little explained that his only other attorney, Ms. Samya Burney, has as her major legal responsibilities appeals and other felony criminal matters, and that it was presumptuous of Mr. Meyers to assume that Ms. Burney was available to handle any and all functions for Mr. Little in his absence.

The Court agrees with Mr. Little as to that point: "Local culture" has been to trust the word of counsel when setting forth explanations, excuses, and requests for tolerance regarding discovery absent good cause, based on bad experiences, to do so. Acknowledging Mr. Meyers' argument that the discovery deadlines are rapidly approaching and there were gaps in responses to his inquiries of Mr. Little, nonetheless counsel know they can work with the Court to extend deadlines if needs be, again for good cause.  Mr. Little's hospitalization and health problems, set forth in letters to defense counsel, appear to qualify as good cause here.

During the telephonic discovery dispute conference, differences were aired as to the number of depositions needed and when they could be scheduled.  Mr. Little clarified that he

ultimately probably did not need or want all of the percipient witnesses he listed in his FRCP §26(a)(1) disclosures. Counsel agreed to meet and confer regarding the individuals that needed to be deposed, and, further, all three counsel agreed to coordinate their calendars, taking into account Mr. Weakley's trial schedule and other issues, to set depositions.

Counsel are ORDERED to meet and confer, agree which witnesses are likely to be called to testify at trial, and coordinate the setting of depositions with *all* counsels' calendars. IT IS SO ORDERED.

**Dated:   October 21, 2005**          **/s/ Sandra M. Snyder**
icido3                                  UNITED STATES MAGISTRATE JUDGE