1

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT FOR THE

7                       EASTERN DISTRICT OF CALIFORNIA

8

9    HOLLY LOUEN,                      )        No. CV-F-04-6556 REC SMS
                                       )
10                   Plaintiff,        )        ORDER DENYING PLAINTIFF'S
                                       )        MOTION FOR RECONSIDERATION
11            vs.                      )        OF THE MAGISTRATE JUDGE'S
                                       )        RULING OF JANUARY 20, 2006.
12   FRESNO POLICE OFFICER BRIAN       )        (Doc. 74)
     TWEDT; THE CITY OF FRESNO,        )
13   CALIFORNIA,                       )        ORDER DENYING PLAINTIFF'S
                                       )        MOTION FOR ABSTENTION
14                   Defendants.       )        PENDING RESOLUTION OF
                                       )        PARALLEL STATE COURT
15   _____)        ACTION.  (Doc. 85)

16

17       On April 17, 2006, the Court heard Plaintiff's Motion for

18   Reconsideration of the Magistrate Judge's Ruling of January 20,

19   2006, and Plaintiff's Motion for Abstention Pending Resolution of

20   Parallel State Court Action.  Upon due consideration of the

21   written and oral arguments of the parties and the record herein,

22   the Court DENIES the motions, as set forth herein.

23   **I.   Background**

24       **A.   Alleged Conduct**

25       The facts as alleged in the Complaint are as follows.

26   Plaintiff Holly Louen contends that Defendant Brian Twedt, an

                                      1

1 officer with the Fresno Police Department, has engaged in a

2 series of threatening and intimidating acts against her.  At some

3 point prior to the alleged threats and intimidation, Plaintiff

4 lodged an internal affairs complaint against Mr. Twedt.

5      On March 7, 2004, Mr. Twedt followed Plaintiff's vehicle on

6 his motorcycle, eventually passing her on a section of the road

7 that provided for one lane of traffic in that direction.  On

8 March 16, 2004, Mr. Twedt, on his motorcycle, approached

9 Plaintiff and her mother, in front of the mother's home, and

10 shined his headlights at them for several minutes while he revved

11 his engine.  During both incidents, Mr. Twedt was wearing his

12 Fresno Police Department uniform and riding his department-issued

13 motorcycle.

14      Plaintiff also alleges that, while off-duty, Mr. Twedt

15 falsely reported that Plaintiff rear-ended his vehicle, verbally

16 assaulted Plaintiff at the gate of her residential community,

17 deliberately refused to proceed through an intersection on a

18 green light to impede Plaintiff and her husband, cut off

19 Plaintiff at the gate of her property, recklessly accelerated in

20 reverse out of his driveway while Plaintiff was present, and

21 prevented Plaintiff from parking at her son's school.  Plaintiff

22 alleges that policy of the City of Fresno (the "City") ratified

23 Mr. Twedt's misconduct.

24 **B.   The State Court Action**

25      On May 6, 2004, Plaintiff filed a Petition for Injunction

26 Prohibiting Civil Harassment in Fresno County Superior Court.  On

1  June 30, 2004, the court found after a trial that Plaintiff had,

2  by clear and convincing evidence, established the following:

3  1.   On February and March of 2003, Mr. Twedt attempted to annoy

4       Plaintiff by interfering with the movement of her vehicle.

5  2.   On March 7, 2004, Mr. Twedt attempted to harass or annoy

6       Plaintiff by following her and passing her in a one lane

7       area on a police motorcycle.

8  3.   On March 16, 2004, Mr. Twedt tried to annoy Plaintiff by

9       shining his police motorcycle lights in the direction of

10      Plaintiff and her mother for several minutes.

11 4.   On March 26, 2004, Mr. Twedt impeded Mr. Louen, Plaintiff's

12      husband, in a nearby intersection by sitting through an

13      entire green signal, then speeding through the yellow

14      signal, which prevented Mr. Louen from proceeding.

15 5.   On April 27, 2004, Mr. Twedt impeded Plaintiff's entry to

16      her neighborhood.

17 6.   On April 30, 2004, Mr. Twedt impeded Plaintiff at an

18      intersection by sitting through an entire green signal and

19      speeding off through the yellow signal, which prevented

20      Plaintiff from entering the intersection on the green

21      signal.  Minutes afterward, Mr. Twedt exited his vehicle and

22      walked "quickly and aggressively" toward Plaintiff's

23      vehicle, which was stopped behind him.  He then yelled at

24      Plaintiff, using "foul language."

25 7.   Mr. Twedt's acts comprised a "knowing, willful course of

26      conduct"  that annoyed and harassed Plaintiff and served no

3

1    legitimate purpose.

2 Mot. for Abstention Ex. C ("Reporter's Transcript" 3:3-5:7).

3    On January 7, 2005, Mr. Twedt appealed the trial court's

4 decision to the Court of Appeal for the Fifth Appellate District.

5    **C.    This Action**

6    On November 15, 2004, Plaintiff filed a complaint for

7 damages and declaratory relief in this Court.  The Court referred

8 all appropriate pretrial matters in the case to Magistrate Judge

9 Sandra M. Snyder pursuant to 28 U.S.C. section 636(b) and Local

10 Rules 72-302(c)(1) and 72-303.  On November 4, 2005, the

11 Magistrate Judge ordered Plaintiff to undergo a mental

12 examination.  This order was memorialized in a written order on

13 December 22, 2005.  Pursuant to Plaintiffs' request, the

14 Magistrate Judge permitted the proceedings to be tape recorded.

15 Plaintiff did not ask to have counsel present during the

16 examination.

17    On December 2, 2005, the date for which the mental

18 examination was scheduled, Plaintiff's counsel arrived with

19 Plaintiff at least fifteen minutes after the agreed-upon starting

20 time.  Plaintiff's counsel asked Dr. Harold L. Seymour, who was

21 scheduled to conduct the examination, to attempt to complete it

22 anyway.  Dr. Seymour discovered that Plaintiff's counsel intended

23 to be present for the examination.  Dr. Seymour refused to

24 proceed with Plaintiff's counsel present because doing so would

25 violate standards and practices of clinical interviewing.

26 Plaintiff's counsel refused to allow Plaintiff to undergo the

4

1 examination without his presence.

2       On December 20, 2005, the City filed its Motion for

3 Sanctions for Failure to Comply with Court Order, based on

4 Plaintiff's failure to undergo the examination as ordered.

5 Plaintiff opposed the motion, arguing that neither she nor

6 Plaintiff's counsel had violated any court order.  At oral

7 argument on January 20, 2006, the Magistrate Judge imposed

8 sanctions in the amount of $2,500, stayed until the conclusion of

9 this case.  The Magistrate Judge memorialized its findings in a

10 written order on February 24, 2006.

11       On January 28, 2006, Plaintiff filed its Objection to

12 Proposed Sanctions Order and Alternative Application for

13 Reconsideration of January 20, 2006 Ruling.  The Magistrate Judge

14 deemed this to be a motion for reconsideration by the district

15 judge of a magistrate judge's ruling pursuant to Rule 72(a) of

16 the Federal Rules of Civil Procedure and Local Rule 72-303(c).

17 The City and Mr. Twedt opposed the Motion for Reconsideration.

18       On March 14, 2006, Plaintiff filed its Motion for Abstention

19 Pending Resolution of Parallel State Court Action based on the

20 doctrines of Colorado River Water Conservation District v. United

21 States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).

22 Both the City and Mr. Twedt also opposed the Motion for

23 Abstention.

24 **II.   Motion for Reconsideration**

25       **A.    Standard of Review**

26       According to Local Rule 72-303, a district judge upholds a

5

1 magistrate's ruling on a referred matter unless it is "clearly

2 erroneous or contrary to law."  See Fed. R. Civ. P. 72(a); 28

3 U.S.C. § 636(b)(1)(A).

4     The "clearly erroneous" standard applies to a magistrate

5 judge's findings of fact.  Concrete Pipe & Prods. v. Constr.

6 Laborers Pension Trust, 508 U.S. 602, 623, 113 S. Ct. 2264, 124

7 L. Ed. 2d 539 (1993).  "A finding is 'clearly erroneous' when

8 although there is evidence to support it, the reviewing [body] on

9 the entire evidence is left with the definite and firm conviction

10 that a mistake has been committed."  Id. at 622.

11     The "contrary to law" standard, on the other hand, allows

12 independent, plenary review of purely legal determinations by the

13 magistrate judge.  FDIC v. Fidelity & Deposit Co. of Md., 196

14 F.R.D. 375, 378 (S.D. Cal. 2000); Haines v. Liggett Group, Inc.,

15 975 F.2d 81, 91 (3d Cir. 1992).

16     **B.   Magistrate Judge's Imposition of Sanctions**

17     Plaintiff argues that the Magistrate Judge's decision to

18 impose sanctions was contrary to law because the Magistrate Judge

19 had never issued an order prohibiting Plaintiff's counsel to

20 attend the examination.  Plaintiff contends that the Magistrate

21 Judge issued sanctions because Plaintiff's counsel attended the

22 examination, but that no order of the Court or procedural law

23 prohibits his attendance.  Defendants contend that Plaintiff was

24 sanctioned for failing to undergo the examination, not simply

25 because counsel attempted to attend.  The Court agrees with

26 Defendants.

6

1     Rule 37 of the Federal Rules of Civil Procedure authorizes a

2  court to sanction a party who "fails to obey an order to provide

3  or permit discovery, including an order made under . . . Rule 35,

4  . . . ."  In her order of December 22, 2005, the Magistrate Judge

5  ordered that Plaintiff submit to the examination on December 2,

6  2005.

7     The ordered examination did not take place as scheduled.

8  The reason the examination did not occur is that Plaintiff's

9  counsel insisted on being present during the examination.  It

10 appears that the first time Plaintiff's counsel made known to

11 anyone that he intended to attend was when he and his client

12 arrived at the examination location, which was at least fifteen

13 minutes after the scheduled start time.  Regardless of the merits

14 of Plaintiff's contention that counsel did not violate an order

15 by showing up at the examination, it cannot be disputed that

16 Plaintiff failed to comply with the Magistrate Judge's order that

17 the Plaintiff undergo the examination that day.

18    The more apt question appears to be whether Plaintiff was

19 justified in failing to complete the examination according to the

20 Magistrate Judge's order, given her counsel's insistence that he

21 attend.  The Magistrate Judge held that Plaintiff's counsel had

22 the "responsibility to inform the Court that you intended to go

23 or to ask if you could go . . . ."  Transcript of Oral Argument

24 at 17:3-4, 43:10-17 ("[I]t was your obligation to bring it up.").

25 The Magistrate Judge also took into account that Plaintiff and

26 Plaintiff's counsel arrived at least fifteen minutes late.

1  Transcript of Oral Argument at 17:8-13.  The Magistrate Judge

2  based her conclusion on Plaintiff's counsel's extensive

3  experience attending examinations (Transcript of Oral Argument at

4  43:18-20) and the weight of federal authority against the

5  practice (Transcript of Oral Argument at 14:3-7, 43:11-16).  She

6  concluded that counsel should have known that leave of the court

7  was required.

8       Rule 35 is silent as to who may attend a mental examination.

9  Tirado v. Erosa, 158 F.R.D. 294, 295 (S.D.N.Y. 1994).  Though

10  district courts have granted requests that counsel attend

11  examinations, no court has held that a party has an absolute

12  right to have an attorney present.  Id.; see Zabkowicz v. W. Bend

13  Co., 585 F. Supp. 635, 636 (E.D. Wis. 1984) (permitting attorney

14  to attend to ameliorate the risk that an "unsupervised

15  examination could easily be transformed into a de facto

16  deposition").  Plaintiff does not cite, nor is the Court aware

17  of, any authority permitting an attorney to attend an examination

18  in the absence of an affirmative court order to that effect.

19  Holland v. United States, 182 F.R.D. 493, 495 (D.S.C. 1998) ("The

20  weight of federal authority, however, favors the exclusion of the

21  plaintiff's attorney from a Rule 35 examination absent a

22  compelling reason.").  Plaintiff asked for and received

23  permission to record the examination on audiotape.  Plaintiff

24  never requested permission for counsel to attend and the

25  Magistrate Judge did not allow for his attendance.

26       The Court finds that the Magistrate Judge correctly

1 interpreted the federal law requirement that an attorney who
2 wishes to attend a Rule 35 examination may do so only on the
3 basis of a court's order.  Here, the Magistrate Judge ordered
4 that Plaintiff attend an examination and allowed only that the
5 examination be tape recorded.

6      Given the Magistrate Judge's correct interpretation of the
7 law, her finding that Plaintiff violated this order by failing to
8 attend the examination at the prescribed date and time was not
9 clearly erroneous.  The Magistrate Judge found, based on
10 Plaintiff's counsel's experience with this type of cases, that he
11 had a responsibility to inform the Court of his intent to attend.
12 Plaintiff's counsel's eleventh-hour request to attend, followed
13 by his refusal to allow the examination to proceed, violated the
14 Magistrate Judge's order that Plaintiff submit to the
15 examination.  Accordingly, sanctions under Rule 37 are
16 appropriate.

17      **C.   Scope of Examination**

18      Plaintiff takes issue with the Magistrate Judge's order
19 that Plaintiff appear for an Independent Mental Examination
20 ("IME").  Plaintiff objects on the ground that the original order
21 of December 22, 2005, called only for a "question and answer
22 session," not a full-day examination.  Order re: Independent
23 Medical Examination 2:15-16.  Plaintiff argues that the scope of
24 the examination was not "before the Court" on January 20, 2006,
25 when the Magistrate Judge ordered the more-thorough IME.  The
26 Magistrate Judge, Plaintiff argues, in ordering the IME, levied a

1 discovery sanction that exceeded her powers under Rule 37 and

2 violated Plaintiff's due process rights.

3       Under Rule 35, a court may order a person to undergo a

4 mental examination when a mental condition is "in controversy"

5 but "only on motion for good cause shown."  Fed. R. Civ. P.

6 35(a).  These predicates

7            are not met by mere conclusory allegations of
             the pleadings – nor by mere relevance to the
8            case – but require an affirmative showing by
             the movant that each condition as to which
9            the examination is sought is really and
             genuinely in controversy and that good cause
10           exists for ordering each particular
             examination.

11

12 Schlagenhauf v. Holder, 379 U.S. 104, 118, 85 S. Ct. 234, 13 L.

13 Ed. 2d 152 (1964)).

14       In its motion for sanctions, Plaintiff requested that the

15 Magistrate Judge order Plaintiff to submit to a full-day IME,

16 including a "diagnostic interview with psychosocial history, a

17 [Personality Assessment Inventory] and a memory performance

18 test."  Mot. for Sanctions 6:12-14.  In its opposition to the

19 motion, Plaintiff argued against the expanded battery of tests.

20 Opp'n to Mot. for Sanctions 6:4-22.

21       At oral argument on the motion for sanctions, the Magistrate

22 Judge explained her reasons for ordering the expanded IME.  The

23 Magistrate Judge reviewed Plaintiff's deposition testimony,

24 finding that Plaintiff's accounts of her level of mental distress

25 varied from answer to answer.  Transcript of Oral Argument at

26 36:8-37:18.  The Magistrate Judge noted that at one point in her

10

1  deposition Plaintiff said the level of stress that she feels

2  today is "heightened" compared to how she felt in 2000.

3  Transcript of Oral Argument at 37:2-7.  The Magistrate Judge

4  pointed out that in response to another question, Plaintiff

5  stated that the stress has now lessened.  Transcript of Oral

6  Argument at 37:10-13.

7      The Magistrate Judge also stated that she accepts Dr.

8  Seymour's opinion in his letter of December 5, 2005, regarding

9  the best manner in which to proceed with a future mental

10 examination.  Transcript of Oral Argument at 38:21-25; see

11 Weakley Decl. in Supp. of Mot. for Sanctions Ex. E.  This letter

12 was not before the Magistrate Judge when she initially ordered

13 the examination.  The Magistrate Judge also found that the stress

14 that Plaintiff might face in undergoing the IME would not be

15 excessive.  Transcript of Oral Argument at 39:6-10.

16     At no point during oral argument or in the subsequent

17 written order did the Magistrate Judge indicate that she ordered

18 the IME as a discovery sanction or otherwise to punish Plaintiff.

19 Rather, the Magistrate Judge reviewed intervening circumstances

20 and evidence that had come to light since she ordered the initial

21 examination.  The Magistrate Judge properly decided "on motion

22 for good cause shown" that a full-day IME was proper under Rule

23 35 of the Federal Rules of Civil Procedure.  The Court finds that

24 in ordering the IME the Magistrate Judge has not acted in a

25 manner contrary to law and has not made findings that are clearly

26 erroneous.

1   **III.  Plaintiff's Motion for Abstention/<u>Colorado River</u> Stay[1]**

2       Plaintiff asks the Court to stay its proceedings pending a

3   resolution of the pending state court appeal.  In <u>Colorado River</u>

4   <u>Water Conservation District v. United States</u>, 424 U.S. 800, 96 S.

5   Ct. 1236, 47 L. Ed. 2d 483 (1976), the Supreme Court enunciated a

6   theory by which federal courts could refuse to exercise their

7   jurisdiction based on "considerations of 'wise judicial

8   administration, giving regard to conservation of judicial

9   resources and comprehensive disposition of litigation.'"  <u>Id.</u> at

10  817.  Federal courts have a "virtually unflagging obligation

11  . . . to exercise the jurisdiction given them."  <u>Id.</u>  Because of

12  this obligation, a federal court may decline to hear cases under

13  its jurisdiction "'only in the exceptional circumstances where

14  the order to the parties to repair to the State court would

15  clearly serve an important countervailing interest.'"  <u>Moses H.</u>

16  <u>Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 14, 103 S.

17  Ct. 927, 74 L. Ed. 2d 765 (1983) (quoting <u>Colorado River</u>, 424

18  U.S. at 813).

19      A stay under <u>Colorado River</u> is only appropriate where a

20  parallel state proceeding exists that is "substantially similar"

21  to the federal action.   <u>Nakash v. Marciano</u>, 882 F.2d 1411, 1416

22

23      [1]"'The <u>Colorado River</u> doctrine is not technically an
    abstention doctrine,' <u>Holder v. Holder</u>, 305 F.3d 854, 867 n. 4 (9th
24  Cir. 2002); therefore, a district court's decision declining to
    exercise federal jurisdiction pursuant to <u>Colorado River</u> is more
25  properly referred to as a stay or dismissal, as the case may be."
    <u>Smith v. Cent. Ariz. Water Conservation Dist.</u>, 418 F.3d 1028, 1032
26  (9th Cir. 2005).

12

1 (9th Cir. 1989).  A district court abuses its discretion if it

2 grants a stay under <u>Colorado River</u> and "*there is any substantial*

3 *doubt*" as to whether "the parallel state proceeding will end the

4 litigation."  <u>Intel Corp. v. Advanced Micro Devices</u>, 12 F.3d 908,

5 913 (9th Cir. 1993) (quoting <u>Moses H. Cone</u>, 460 U.S. at 428)

6 (Ninth Circuit's emphasis).  This rule stems from the Supreme

7 Court's "concern for the prompt and final resolution of all

8 disputed issues."  <u>Id.</u> (citing <u>Gulfstream Aerospace Corp. v.</u>

9 <u>Mayacamas Corp.</u>, 485 U.S. 271, 277, 108 S. Ct. 1133, 99 L. Ed. 2d

10 296 (1988)).  In <u>Intel</u>, the Ninth Circuit held that the district

11 court abused its discretion by staying the federal action because

12 the state action would only resolve all of the issues in the

13 federal action if certain contingencies materialized.  <u>Id.</u>  If,

14 for instance, the state court in that case were to overturn an

15 arbitration award at issue, then the case would necessarily

16 return to federal court.  <u>Id.</u>

17    Here, the state case is substantially different from this

18 case.  It is true that central facts are similar:  both cases

19 involve Mr. Twedt's alleged harassment of Plaintiff.  The parties

20 and the claims in the two cases, however, are different.  In the

21 state court action, Plaintiff sought only injunctive relief under

22 California's civil harassment statute, Civil Procedure Code

23 section 527.6.  Mot. for Abstention Ex. B at 1.  The only

24 Defendant in that action is Mr. Twedt.  <u>Id.</u>  On the other hand,

25 this case is a federal civil rights action, combined with state-

26 law tort claims, in which Plaintiff requests damages and

13

1  declaratory relief.  Furthermore, Plaintiff is now suing the

2  City, which was not involved in the state action, along with Mr.

3  Twedt.    Plaintiff does not contend that the state case will

4  necessarily resolve all of the claims in this case.  Rather, she

5  concedes that the federal civil rights claims in this case, as

6  well as the presence of another Defendant, will create a host of

7  unique issues.  Plaintiff admits that, if the state court verdict

8  is affirmed, this Court will only have to determine "issues of

9  color of law, municipal liability, and damages" resulting in a

10 trial that "could easily be only a third as lengthy as presently

11 estimated."  Mot. for Abstention 5:16-19.  Because the state

12 trial court has already decided in Plaintiff's favor, there is a

13 substantial possibility that Plaintiff will prevail,

14 necessitating further proceedings in this Court.  Plaintiff has

15 not addressed whether a state court finding in Mr. Twedt's favor

16 would terminate this litigation.  In any event, because

17 substantial doubt exists as to whether resolution of the state

18 court suit will resolve all of the issues of the federal suit,

19 stay under Colorado River is inappropriate.

20 **IV.   Stay of Declaratory Relief Claims under Brillhart**

21       Plaintiff argues that, because this case contains claims for

22 declaratory relief, a stay is proper under the principle

23 enunciated in Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.

24 Ct. 1173, 86 L. Ed. 1620 (1942).  "[W]hen a party requests

25 declaratory relief in federal court and a suit is pending in

26 state court presenting the same state law issues, there exists a

14

1  presumption that the entire suit should be heard in state court."

2  Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366-67 (9th

3  Cir. 1991) (citing Brillhart, 316 U.S. at 495).  The Ninth

4  Circuit has interpreted the Supreme Court's holding as follows:

> The pendency of a state court action,
> however, does not of itself require a
> district court to refuse declaratory relief
> in federal court.  In deciding whether to
> grant such relief in a particular case, the
> Supreme Court has counseled district courts
> to
>> ascertain whether the questions in
>> controversy between the parties to
>> the federal suit, and which are not
>> foreclosed under the applicable
>> substantive law, can better be
>> settled in the proceeding pending
>> in the state court.  This may
>> entail inquiry into the scope of
>> the pending state court proceeding
>> and the nature of defenses open
>> there.  The federal court may have
>> to consider whether the claims of
>> all parties in interest can
>> satisfactorily be adjudicated in
>> that proceeding, whether necessary
>> parties have been joined, whether
>> such parties are amenable to
>> process in that proceeding, etc.

18  Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1367 (9th Cir.

19  1991) (quoting Brillhart, 316 U.S. at 495).

20      It is readily apparent to the Court that this case is as

21  poor a candidate for a stay under Brillhart as it is for a

22  Colorado River stay.  This is so because the parties and

23  substantive law at issue in the state and federal cases are

24  different, and at best, the state case can only partially resolve

25  the claims in the federal case.

26      In any event, the Brillhart rationale would only support a

15

1  stay of the declaratory relief claims, not the claims for money

2  damages.  Chamberlain, 931 F.2d at 1367.  A district court does

3  not abuse its discretion when it retains a declaratory relief

4  cause of action, along with claims for money damages, to avoid

5  piecemeal litigation.  Id. at 1367-68.  Regardless of whether the

6  Court were to stay on this ground, a large portion of the case —

7  the claims for damages — would remain in federal court.  Thus,

8  avoidance of piecemeal litigation counsels against staying the

9  claims for declaratory relief pending the resolution of the state

10  case.  The Court declines to stay this case under Brillhart.

11      **ACCORDINGLY:**

12  1.   Plaintiff is sanctioned $2,500.00 for failure to comply with

13       a court order.

14  2.   The sanctions are stayed until the conclusion of this case.

15  3.   As soon as is practicable, Plaintiff shall appear for an

16       Independent Mental Examination with Dr. Harold L. Seymour.

17  4.   The parties shall either stipulate to a date and time for

18       the examination or arrange a scheduling conference with

19       Magistrate Judge Snyder to do so.

20  5.   The examination will be audio-recorded.

21  6.   No third party, including counsel, may attend the

22       examination.

23  7.   Plaintiff's Motion for Abstention Pending Resolution of

24       Parallel State Court Action is DENIED.

25

26

16

1   IT IS SO ORDERED.

2   **Dated:  April 18, 2006**                    **/s/ Robert E. Coyle**
    810ha4                                    UNITED STATES DISTRICT JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26