UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLY LOUEN,<br><br>                    **Plaintiff,**<br><br>    **v.**<br><br>FRESNO POLICE OFFICER BRIAN<br>TWEDT; THE CITY OF FRESNO,<br>CALIFORNIA,<br><br>                    **Defendants.** | 1:04-CV-06556 OWW SMS<br><br>MEMORANDUM DECISION AND ORDER<br>DENYING PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

## 1.   INTRODUCTION

This matter comes before the court on Plaintiff Holly Louen's ("Louen") motion for summary judgment.  Louen filed a complaint on November 15, 2004 against Defendant Officer Brian Twedt ("Officer Twedt") and the City of Fresno.  Louen alleges that Officer Twedt's continued harassment violated her First and Fourteenth Amendment constitutional rights under 42 U.S.C. § 1983.  Prior to filing this lawsuit, Louen sought and was awarded injunctive relief against Twedt by The Superior Court for the State of California.  The state court issued its findings on June 30, 2004.  Louen seeks summary judgment on collateral estoppel grounds as to the issues litigated in the state case.  The state case is currently on appeal to the State of California Supreme Court.

**1**

### 2.   PROCEDURAL BACKGROUND

Louen filed her complaint on November 15, 2004. (Doc. 1, Complaint)  On November 16, 2006 Louen filed a motion for Summary Judgment. (Doc. 166, Plaintiff's Motion for Summary Judgment) On December 4, 2006 the City of Fresno opposed Louen's motion for summary judgment. (Doc. 177, City of Fresno's Opposition to Motion for Summary Judgment.)  Officer Twedt also opposed Louen's motion on December 4, 2006.  (Doc. 185, Twedt's opposition.) Louen filed her reply on March 20, 2007.  (Doc. 202, Reply to Opposition.)

### 3.   FACTUAL BACKGROUND

**A.   Allegations In The Complaint**

Louen alleges that on March 7, 2004, at approximately 4:45 p.m., she was leaving her residential community and veered left at the stop sign posted by her gate in order to turn south onto Minnewawa Avenue. (Doc. 1, Complaint, ¶ 6.)  At the same time, Officer Twedt, who lives across the street from Louen in the same residential community, was in uniform and on his department-issued motorcycle on Minnewawa Avenue. (*Id.*)  After Louen had begun to proceed south on Minewawa Avenue, she noticed that Officer Twedt had also turned south and had accelerated past her, even though there was only one lane of southbound traffic. (*Id.* at ¶ 7.)  According to Louen, Officer Twedt continued traveling in her direction until the intersection of Herndon and Minnewawa Avenues, at which time he suddenly turned into a driveway. (*Id.*) After she turned westbound onto Herndon Avenue, Louen noticed in her rearview mirror that Officer Twedt had turned back northbound, in the direction from which he had originally come.

**2**

(*Id.*)

On a separate occasion, Louen alleges that on March 16, 2004, at approximately 11:00 p.m., she was in her residential community, outside of her mother's nearby home. (*Id.* at ¶ 8.) Officer Twedt, who once again was in uniform and on his department issued motorcycle, pulled out of his driveway. (*Id.*) Instead of turning toward the exit gate, Officer Twedt turned toward the dead end cul-de-sac where Louen's mother's house is located. (*Id.*)  Officer Twedt then stopped in the street directly facing Louen and her mother, and he shined his headlights directly at them for several minutes while revving his engine. (*Id.*)

Louen argues that Officer Twedt's threatening and intimidating acts as a police officer came in the aftermath of Louen lodging an internal affairs complaint against him with the Fresno Police Department. (*Id.* at ¶ 9.)  The complaint was based on allegedly false allegations made by Officer Twedt against Louen in a report to the Clovis Police Department (*Id.*)  In addition to the above described acts, Louen claims that Officer Twedt has engaged in an ongoing pattern of threats and intimidation towards her while off duty. (*Id.* at ¶ 10.)  The off duty incidents of harassment include

    1.    Twedt falsely reporting that Louen had rear ended his vehicle,

    2.    Twedt verbally assaulting Louen at the gate of her residential community,

    3.    Twedt deliberately refusing to proceed through an intersection on a green light in order to impede

1     Louen and her husband,

2    4. Twedt dangerously cutting off Louen at the gate of

3     her property,

4    5. Twedt recklessly accelerating in reverse out of

5     his driveway when Louen was present,

6    6. Twedt preventing Louen from parking at her son's

7     school.

8 (*Id.*)

9   Louen argues that Officer Twedt's continued misconduct

10 forced her to request a restraining order against him pursuant to

11 Code of Civil Procedure § 527.6.  (*Id.* at ¶ 11)  On June 30,

12 2004, the Hon. R.L. Putnam of the Fresno County Superior Court

13 found by clear and convincing evidence that the above alleged

14 incidents occurred, including the March 7 and 16, 2004 incidents

15 where Louen was acting in his capacity as a Fresno Police

16 Officer.  (*Id.*)

17   In her complaint, Louen brings an action under 42 U.S.C. §

18 1983 for a violation of her First Amendment and Fourteenth

19 Amendment rights as well as for violations of Substantive and

20 Procedural Due Process and Equal Protection.  Louen also requests

21 declaratory relief and asserts various state causes of action

22 including intentional infliction of emotional distress and a

23 violation under California Civil Code § 52.1.

24 **B.** **State Court Findings Issued on June 30, 2004**

25   The California Superior Court, County of Fresno issued its

26 order on June 30, 2004 granting Louen injunctive relief under

27 Cal. Code Civ. Proc. § 527.6.  (Doc. 166, Plaintiff's Motion for

28 Summary Judgment, Exhibit C).  Judge R.L. Putnam, presiding over

**4**

the matter, found the following, by clear and convincing evidence:

1.   The incidents in February and March of 2003 as alleged indicate specific attempts to annoy the plaintiff by interfering in the movement of her vehicle.

2.   The incidents of March 7, 2004 as alleged indicates an attempt by the defendant to harass or annoy the plaintiff by following her and passing her in a one lane area on a police motorcycle.

3.   An incident on March 16, 2004 as alleged indicates the defendant tried to annoy plaintiff by shining his police motorcycle lights in the direction of the petitioner and her mother approximately 11:00 p.m. for several minutes.

4.   An incident on March 26, 2004 as alleged indicates that the defendant impeded plaintiff's husband in a nearby intersection by sitting through an entire green signal speeding through the yellow signal preventing Mr. Louen from proceeding.

5.   An incident on April 27, 2004 as alleged indicates that defendant impeded plaintiff's travel entry into their neighborhood.

6.   The incident on April 30, 2004 as alleged indicates that defendant impeded Louen at an intersection by sitting through an entire green signal and speeding off through the yellow signal

**5**

1      preventing plaintiff from entering the

2      intersection on the green signal, though

3      petitioner apparently honked to advise the signal

4      was green.

5   7. Further, within minutes thereafter the defendant

6      harassed plaintiff at the gated entrance to the

7      housing complex as petitioner drove up to enter.

8      As plaintiff drove behind the defendant, defendant

9      exited his vehicle and walked quickly and

10     aggressively towards plaintiff's vehicle and

11     yelled loudly something to the effect, "You bitch.

12     Get a life," and other foul language.

13  8. This incident was documented when Louen

14     snapped a picture of the defendant as he stood

15     outside her vehicle.

16  9. She then proceeded to drive around him into the

17     complex, the gate apparently being open.

18  10. Each party drove to their respective residence.

19  11. Plaintiff closed her garage door as she believed

20     defendant was coming across the street to approach

21     her.

22  12. Mr. Twedt thereafter called the Clovis Police

23     Department to report plaintiff had bumped him, and

24     plaintiff called minutes later to report defendant

25     had assaulted her.

26  13. Plaintiff denied hitting defendant's vehicle, and

27     no damage was found on either car.

28  14. The court found that though most of the incidents

**6**

1  if standing alone would lack sufficient strength

2  to suggest a continuing trend of harassment,

3  together they indicate a knowing, willful course

4  of conduct and entails a pattern or series of acts

5  over a period of time evidencing a continuity of

6  purpose.

7  15. The court further found that the acts were

8  directed at the specific person of Louen or

9  family.

10  16. The defendant annoyed or harassed Louen in that

11  these actions or acts have served no legitimate

12  purpose.

13  17. In addition, the court finds that the severe

14  emotional distress of plaintiff was caused by

15  defendant's acts, and that a reasonable person

16  under similar circumstances might suffer such

17  distress.

18  18. The court further found that the defendants' acts

19  taken as a whole are not constitutionally

20  protected activity; therefore, the court found by

21  the standard of clear and convincing evidence that

22  there is substantial evidence to sustain the

23  petition for injunctive relief on behalf of

24  petitioner pursuant to Code of Civil Procedure

25  Section 527.6(b)(3).

26  (Doc. 166, Plaintiff's Motion for Summary Judgment, Exhibit C).

27  The court especially expressed concerns over the April 30th,

28  2004 incident that there may soon be more serious acts of

**7**

confrontation or violence.  Prior to entering an injunctive order the court also ordered Mr. Twedt to submit to a psychological evaluation at his expense by a psychologist acceptable to the court and plaintiff.

The Superior Court's findings are currently on appeal with the California State Supreme Court.

**C.   Disputed Facts**

Officer Twedt disputes the following facts:

1.   That on several instances in February and March of 2003 he interfered with Louen's movement of her vehicle.  (DSDF, No. 1.)

2.   That he followed Louen while in uniform on his department vehicle and passed her on a one lane road on March 7, 2003. (DSDF, No. 2.)

3.   That while in uniform and on his department motorcycle, he shined his lights at Louen and her mother for several minutes on March 16, 2004. (DSDF, No. 3.)

4.   That he intentionally delayed moving through an intersection and then sped through a yellow light, in order to prevent Louen's husband from progressing through the intersection on March 26, 2004. (DSDF, No. 4.)

5.   That he impeded Louen's travel entry into her neighborhood on April 27, 2004.  (DSDF, No. 5.)

6.   That he intentionally delayed moving through an intersection and then sped through a yellow light in order to attempt to prevent Louen from

**8**

progressing through the intersection on April 30, 2004.  When this attempt was unsuccessful, Twedt exited his vehicle at the gate of his and plaintiff's residential community and assaulted her by charging toward her vehicle and yelling obscenities. (DSDF, No. 6.)

7. That the April 30, 2004 event which was partially depicted by plaintiff on film, was the subject of a false and retaliatory police report of collision, although his vehicle was undamaged. (DSDF, No. 7.)

8. That there was no legitimate purpose for any of Officer Twedt's conduct.  (DSDF, No. 8.)

**D.    Undisputed Facts**

When Twedt was in uniform and operating a department issued vehicle, he purports to be acting as a peace officer, and can exercise all of the powers that he has as a peace officer of the state of California.  (DSDF, No. 9.)

When Twedt is in uniform, and operating a department issued vehicle, he purports to be a representative of the Fresno Police Department.  (DSDF, No. 10.)

## 4.  <u>STANDARD OF REVIEW</u>

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).  Therefore, to defeat a motion for summary judgment, the non-

moving party must show (1) that a genuine factual issue exists
and (2) that this factual issue is material.  *Id.*  A genuine
issue of fact exists when the non-moving party produces evidence
on which a reasonable trier of fact could find in its favor
viewing the record as a whole in light of the evidentiary burden
the law places on that party.  *See Triton Energy Corp. v. Square
D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986).  Facts are
"material" if they "might affect the outcome of the suit under
the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*,
477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations
without any significant probative evidence tending to support the
complaint.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.
2001).

> [T]he plain language of Rule 56(c) mandates the
> entry of summary judgment, after adequate time
> for discovery and upon motion, against a party
> who fails to make a showing sufficient to
> establish the existence of an element essential
> to the party's case, and on which that party
> will bear the burden of proof at trial.  In such
> a situation, there can be "no genuine issue as
> to any material fact," since a complete failure
> of proof concerning an essential element of the
> nonmoving party's case necessarily renders all
> other facts immaterial.

*Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986).  The more
implausible the claim or defense asserted by the nonmoving party,
the more persuasive its evidence must be to avoid summary
judgment.  *See United States ex rel.  Anderson v. N. Telecom,
Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless, the
evidence must be viewed in a light most favorable to the

1 nonmoving party.  *Anderson*, 477 U.S. at 255.  A court's role on

2 summary judgment is not to weigh evidence or resolve issues;

3 rather, it is to determine whether there is a genuine issue for

4 trial.  *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th

5 Cir. 1996.)

## 5.  DISCUSSION

### A.   Legal Background

#### i.   42 U.S.C. 1983

9 Plaintiff brings this lawsuit under 42 U.S.C. § 1983, which

10 provides a cause of action against "[e]very person who, under

11 color of any statute, ordinance, regulation, custom, or usage, of

12 any State...subjects, or causes to be subjected, any citizen of

13 the United States or other person within the jurisdiction thereof

14 to the deprivation of any rights, privileges, or immunities

15 secured by the Constitution and laws..."  To establish liability

16 under 1983, a plaintiff must show (1) that he has been deprived

17 of a right secured by the United States Constitution or a federal

18 law and (2) that the deprivation was effected "under color of

19 state law."  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

#### a.   First Amendment Retaliation

21 To demonstrate retaliation in violation of the First

22 Amendment, Plaintiff must first prove that Defendant took action

23 that "would chill or silence a person of ordinary firmness from

24 future First Amendment activities."  *Skoog v. County of

25 Clackamas*, 469 F.3d 1221, 1231-1232 (9th Cir. 2006).  The second

26 requirement involves causation.  *Id.*  Plaintiff must ultimately

27 prove the Defendant's desire to cause the chilling effect was a

28 but for cause of the Defendant's action.  *Id*.  A plaintiff need

1  not plead the absence of probable cause in order to state a claim
2  for retaliation.  *Id.*

3       There are no allegations that Plaintiff's speech was
4  "chilled" or facts in the complaint or anywhere in the record
5  that Defendant's harassment was motivated by a desire to cause
6  the chilling effect.

7              **b.   Substantive Due Process**

8       "Substantive due process protects individuals from arbitrary
9  deprivation of their liberty by government."  *Brittain v. Hansen*,
10  451 F.3d 982, 991 (9th Cir. 2006).  Behavior by officials that
11  "shocks the conscience" has been held to deprive liberty in
12  violation of the due process clause of the Fourteenth Amendment.
13  *Fontana v. Haskin*, 262 F.3d 871, 891 (9th Cir. 2001).  "Only the
14  most egregious official conduct can be said to be arbitrary in a
15  constitutional sense."  *Brittain*, 451 F.3d at 981.  "Such conduct
16  can be shown by conduct intended to injure in some way
17  unjustifiable by any government interest."  *Id.*  (internal
18  quotations omitted.)  "It is not enough to allege conscience
19  shocking action, however.  As a threshold matter, to establish a
20  substantive due process claim a plaintiff must show a government
21  deprivation of life, liberty or property."  *Id.*  There is no
22  general liberty interest in being free from capricious government
23  action.  *Id.*  Thus, in order to establish a constitutional
24  violation based on substantive due process, Louen must show both
25  a deprivation of her liberty and conscience shocking behavior by
26  Officer Twedt.  *see, Id.*

27       Plaintiff leaves the court to draw its own inference as to
28  whether she was deprived of a liberty interest and whether the

**12**

1   officers conduct sufficiently "shocked the conscious."  For

2   example, Plaintiff alleges several instances of Defendant

3   interfering with the movement of her vehicle.  Four or five

4   incidents, although, annoying, may shock the conscious if Twedt

5   was bringing his attack on Plaintiff under the color of his

6   office.  This, however, appears to be a personal dispute between

7   the parties.  Examples of Ninth Circuit cases that shock the

8   conscience are:  *Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir.

9   2001)(police officer's conduct was found to "shock the

10  conscience" because officers sexually assaulted the Plaintiff);

11  *United States v. Smith,* 924 F.2d 889, 897 (9th Cir.

12  1991)(outrageous government conduct found where the government

13  engineered and directed the criminal enterprise from start to

14  finish); *United States v. Bogard*, 783 F.2d 1428, 1435 (9th Cir.

15  1986)(outrageous government conduct found where police have been

16  brutal in employing physical or psychological coercion against

17  the defendant.).  Twedt's actions in this case although not

18  trivial, reflect a personal controversy and do not per se rise to

19  the level of "conscience shocking" behavior.

20              **c.   Procedural Due Process**

21      The Fourteenth Amendment protects one from deprivations of

22  property or liberty without procedural due process.  *Lebbos v.*

23  *Judges of Superior Court*, 883 F.2d 810, 818 (1989).  Due process

24  requires notice and an opportunity to be heard at a meaningful

25  time and in a meaningful manner.  *Id.*

26      Plaintiff does not specify what constitutional liberty

27  interest she was deprived of and does not allege that she did not

28  have an opportunity to be heard.

**13**

### d.   Equal Protection

To state a claim for an equal protection violation, a plaintiff must allege that defendant intentionally discriminated against him based upon membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Plaintiff has not provided evidence that she is a member of a protected class.  Defendants do not address this as an issue.

### ii.   Monell Liability

Local governments[1] are "persons" subject to suit for "constitutional tort[s]" under 42 U.S.C. § 1983.[2] *Haugen v. Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)) (also finding the fact that "local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are "persons" under § 1983 in those cases in which, as here, a local government would be suable in its own name").  However, a local government's liability is limited.

---

[1] Although *Monell* dealt with a municipal government's liability under § 1983, the standard there announced was more broadly framed in terms of "a local government." *Brass v. County of L.A.*, 328 F.3d 1192, 1198 (9th Cir. 2003).

[2] "There is certainly no constitutional impediment to municipal liability.  'The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment.'" *Monell*, 436 U.S. 691 (quoting *Milliken v. Bradley*, 433 U.S. 267, 291 (1977)).  There is no "basis for concluding that the Eleventh Amendment is a bar to municipal liability." *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890)).

**14**

Although a local government can be held liable for its official policies or customs, it will not be held liable for an employee's actions outside of the scope of these policies or customs. "[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.  In particular,...a municipality cannot be held liable solely because it employs a tortfeasor, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691.  The statute's "language plainly imposes liability on a government that, under color of some official policy, [that] 'causes' an employee to violate another's constitutional rights." *Id*. at 692.  Therefore, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

### iii. Suits Against Government Officials: Official and Individual Capacity Suits

"Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002) (citing *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985)); *see also Doe v. Lawrence*

**15**

1   *Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (finding

2   that "a suit against a state official in his official capacity is

3   no different from a suit against the [official's office or the]

4   State itself")(citing *Will v. Mich. Dep't of State Police*, 491

5   U.S. 58, 70-71 (1989).  In such suits, the real party in interest

6   is the entity for which the official works.  *Hafer v. Melo,* 502

7   U.S. 21, 25 (1991).  A federal action for monetary damages

8   against an individual state official acting in his official

9   capacity is barred by the Eleventh Amendment in the same way that

10  an action against a State is barred.  *Doe v. Lawrence Livermore*

11  *Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir. 1997).  "As the Supreme

12  Court has stated, 'official-capacity suits...generally represent

13  only another way of pleading an action against an entity of which

14  an officer is an agent.'"  *Ruvalcaba v. City of Los Angeles*, 167

15  F.3d 514, 524 n.3 (9th Cir. 1999)(quoting *Graham*, 473 U.S. at

16  165).  "'As long as the government entity receives notice and an

17  opportunity to respond, an official-capacity suit is, in all

18  respects other than name, to be treated as a suit against the

19  entity.'"  *Ruvalcaba*, 167 F.3d at 524, n.3 (quoting *Graham*, 473

20  U.S. at 166.)

21      By contrast, "[p]ersonal-capacity suits seek to impose

22  personal liability upon a government official for actions [taken]

23  under color of state law." *Dittman v. California*, 191 F.3d 1020,

24  1027 (9th Cir. 1999)(*citing Kentucky v. Graham*, 473 U.S. 159, 165

25  (1985))(internal quotations omitted).  To establish personal

26  liability in a §1983 or §1985 action, it is enough to show that

27  the official, "acting under color of state law, caused the

28  deprivation of a federal right." *Hafer,* 502 U.S. at 25 (internal

**16**

quotations omitted).  Public officials sued in their personal
capacity may assert personal liability defenses, such as
qualified immunity.  *Dittman,* 191 F.3d at 1027.

Louen does not specify whether she sues Defendants in their
official capacity, individual capacity, or both.  Louen names
Officer Twedt, individually, and the City of Fresno.  Louen
appears to be suing Officer Twedt in both his individual and
official capacity.

### iv.  Collateral Estoppel

Under 28 U.S.C. § 1738, state judicial proceedings "shall
have the same full faith and credit in every court within the
United States... as they have by law or usage in the courts of
such state... from which they are taken.  *Marrese v. American
Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).  This
statute directs a federal court to refer to the preclusion law of
the state in which judgment was rendered.  *Id.; see also, Diruzza
v. County of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003).
Collateral estoppel precludes relitigation of issues argued and
decided in prior proceedings.  *Id.*  A party who asserts the bar
of collateral estoppel bears the burden of demonstrating each of
its elements.  *Jenkins v. County of Riverside*, 138 Cal. App. 4th
593, 617 (Cal. Ct. App. 2006.)  An earlier ruling will be given
collateral estoppel effect when (1) the issue is identical to
that decided in a former proceeding; (2) the issue was actually
litigated and (3) necessarily decided; (4) the doctrine is
asserted against a party to the former action or one who was in
privity with such a party; and (5) the former decision is final
and was made on the merits.  *Id.*  Under California law, a

**17**

1  judgment is not final during the pendency of and until the
2  resolution of an appeal.  *Sosa v. DIRECTV, Inc.,* 437 F.3d 923,
3  928 (9th Cir. 2006); *Eichman v. Fotomat Corp.*, 759 F.2d 1434,
4  1439 (9th Cir. 1985).

5  **B.   Discussion**

6        The order in question, an injunction, is a provisional
7  remedy, authorized based on equitable principles, and is always
8  subject to modification or discharge, even if the injunction is
9  "permanent."  *see, Gilmore v. California*, 220 F.3d 987, 1007 (9th
10 Cir. 2000).

11       **i.   Defendant City of Fresno**

12       It is unclear from Louen's motion whether she is asserting
13 that collateral estoppel should apply to the City of Fresno or
14 only to Twedt, individually.  Louen brings this motion for
15 summary judgment as to issues that were litigated in the
16 California Superior Court for the County of Fresno.  Louen
17 requests summary judgment on collateral estoppel grounds arguing
18 that "the parties [in the state court proceedings] are the same,
19 the issues are the same, and the same issues were actually and
20 necessarily litigated in the underlying action on the merits."
21 (Doc. 166, Plaintiff's Motion for Summary Judgment."

22       The factual record does not support a finding for summary
23 judgment on collateral estoppel grounds against the City of
24 Fresno.  The issues Louen seeks to preclude are identical to
25 those established in the state court's findings of fact.
26 However, the City of Fresno was not a party to the litigation in
27 the Superior Court and, had no opportunity to fully litigate the
28 issues.  Also, a factual dispute exists as to whether the City of

**18**

1  Fresno and Officer Twedt were in privity when the alleged

2  unlawful acts occurred.  Lastly, the Superior Court findings are

3  not a final judgment on the merits because they are still pending

4  appeal in the Supreme Court for the State of California.

5      Summary Judgment against the City of Fresno is **DENIED.**

6      **ii.  Officer Twedt**

7      Louen seeks summary adjudication as to the injunctive relief

8  findings made by the Superior Court against Officer Twedt.  Louen

9  does not dispute that the underlying action is currently pending

10 on appeal with the Supreme Court for the State of California.

11 Louen argues that, it is "extremely clear" that Twedt cannot

12 relitigate the findings of the state court proceeding.  Louen

13 argues that she is entitled to summary adjudication as to the

14 issue of whether or not officer Twedt's alleged intimidation

15 against her was committed.  This ignores the context in which the

16 findings were made and the nature of the remedy sought.  With

17 respect to the pending appeal, Louen argues that upon final

18 resolution of the state appellate proceedings, the underlying

19 state court judgment shall have preclusive effect.  According to

20 Louen, "there can be little doubt that the ultimate affirmance of

21 the state court action on appeal will result in a finding that

22 the acts Twedt committed by clear and convincing evidence, [will

23 be] preclusive as to the issue of Twedt's commission of those

24 same acts for purposes of this proceeding."

25     The law of the State of California is unequivocal.  A

26 judgment is not final under California law during the pendency of

27 and until the resolution of an appeal.  *Sosa,* 437 F.3d at 928;

28 *Eichman*, 759 F.2d at 1439.  Collateral estoppel cannot apply in

this case because the underlying action is pending appeal and a final judgment on the merits has not yet been reached.  Because an injunction, even if permanent, as a provisional remedy, is always subject to modification on a showing of changed conditions.  Plaintiff has not provided law to demonstrate that the doctrine of collateral estoppel applies.

Summary judgment against Officer Twedt is **DENIED**.

### iii. The City of Fresno is Not Vicariously Liable for Twedt's Actions under 42 U.S.C. § 1983.

Louen also argues that "the affirmance of the state court proceedings resolves the City of Fresno's vicarious liability under state law."  Louen argues that the standards for holding a municipality responsible under state law are clearly set forth in Cal. Gov. Code § 815.2.[3]  Louen asserts that under California Government Code § 815.2 the City of Fresno can be held liable for the civil rights violations of its officers under state law. Louen's reliance on Cal. Gov. Code § 815.2 is misplaced.

"Under *Monell*, a municipality sued under § 1983 is not subject to vicarious liability for the acts of its agents: it is only liable when the execution of a government's policy or custom... made by... those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1143 (9th Cir. 2001.) Further, Louen does allege a claim under Cal. Gov. Code § 815.2

---

[3] Cal. Gov. Code § 815.2 states: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

as a cause of action against the City of Fresno in her complaint.
Cal. Gov. Code § 815.2 does not apply to impose vicarious
liability on a municipality for violations under 42 U.S.C. §
1983. *see, Medrano v. Los Angeles,* 973 F.2d 1499, 1505 (9th Cir.
1992)(congress did not intend to impose vicarious liability on
municipalities under section 1983 and although states are free to
impose vicarious liability, section 1983 cannot be used as a
means to impose such liability.)

Summary judgment on the issue of vicarious liability is
**DENIED.**

### 6.   CONCLUSION

Summary judgement against all Defendants based on collateral
estoppel grounds is **DENIED.**

Summary judgment against the City of Fresno under a theory
of vicarious liability is **DENIED.**

IT IS SO ORDERED.

Dated:    **June 20, 2007**                          **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

21