IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HOLLY LOUEN, | ) | No. CV-F-04-6556 OWW/SMS |
| | ) | |
| | ) | ORDER DEEMING PLAINTIFF'S |
| | ) | SUPPLEMENTAL BRIEF (Doc. |
| Plaintiff, | ) | 266) TO BE MOTION FOR |
| | ) | RECONSIDERATION OF ORDER |
| vs. | ) | DENYING PLAINTIFF'S MOTIONS |
| | ) | IN LIMINE NOS. 1 & 2 |
| | ) | REGARDING APPLICATION OF |
| FRESNO POLICE OFFICER BRIAN | ) | COLLATERAL ESTOPPEL AND |
| TWEDT, et al., | ) | GRANTING IN PART AND DENYING |
| | ) | IN PART MOTION FOR |
| | ) | RECONSIDERATION |
| Defendant. | ) | |
| | ) | |

On September 4, 2007 at 5:18 a.m., Plaintiff filed a "Supplemental Brief in Support of Motion in Limine Re: Collateral Estoppel" (Doc. 266). It is the Court's recollection from the hearing on August 27, 2007 that Plaintiff was to submit any supplemental brief by Wednesday, August 29, 2007. Plaintiff did not do so. Although Plaintiff's Supplemental Brief speaks in terms of the Court's "tentative ruling", the Court issued an "Order Denying Plaintiff's Motions in Limine Nos. 1 & 2" on

1

August 29, 2007.  Plaintiff's supplemental brief in effect seeks reconsideration of the "Order Denying Plaintiff's Motions in Limine Nos. 1 & 2 Regarding Application of Collateral Estoppel", (Doc. 257), filed on August 29, 2007 (the August 29 Order). Plaintiff's Supplemental Brief is deemed a motion for reconsideration of the August 29 Order.  Defendants City of Fresno and Brian Twedt filed Supplemental Oppositions to Plaintiff's Supplemental Brief on September 5, 2007.

In the Order denying Plaintiff's Motions in Limine Nos. 1 and 2, the Court ruled:

> For the reasons stated in open court on August 24, 2007, Plaintiff's motions in limine to preclude Defendant Twedt from relitigating the factual findings of the Fresno County Superior Court, Case N. 04CECG1034, and to prohibit Defendant Twedt from introducing evidence with regard to these findings are DENIED.  Further, even if Plaintiff dismisses this action against Defendant City of Fresno, the Court concludes that application of collateral estoppel to Defendant Twedt will be inequitable because of issues of state of mind and other elements of the civil rights claims, supplemental claims under state law, and punitive damages not present in the state court injunctive proceedings.

Plaintiff seeks to prevent Defendants from relitigating the following factual findings made by Judge Putnam in issuing a civil injunction against Brian Twedt and in favor of Plaintiff pursuant to California Code of Civil Procedure § 527.6:

> (1) Twedt had on several instances in February and March of 2003 interfered with the plaintiff's movement of her vehicle; (2) Twedt followed the plaintiff while in uniform and on his department vehicle and passed her

> on a one lane road on March 7, 2003; (3) Twedt, while in uniform and on his department motorcycle, shined his lights at plaintiff and her mother for several minutes on March 16, 2004; (4) Twedt intentionally delayed moving through an intersection and then sped through a yellow light, in order to prevent the plaintiff's husband from progressing through the intersection on April 30, 2004, and, when this attempt was unsuccessful, Twedt exited his vehicle at the gate of his and plaintiff's residential community and assaulted her by charging toward her vehicle and yelling obscenities; and (7) the April 30, 2004 event, which was partially depicted by plaintiff on firm, was the subject of a false and retaliatory police report of collision, although his vehicle was undamaged. The state court also made more general findings of ongoing misconduct by defendant Twedt intended to annoy and harass plaintiff and her family. Finally, the court found that there was no legitimate purpose for any of defendant Twedt's conduct.

"An earlier ruling 'will be given collateral estoppel effect when (1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who was in privity with such a party; and (5) the former decision is final and was made on the merits.' ...." *Jenkins v. County of Riverside*, 138 Cal.App.4th 591, 617 (2006).

Plaintiff again argues that the difference in issues between the two cases does not negate application of collateral estoppel.[1] Plaintiff cites *Smith v. Exxon Mobil Oil Corp.*, 153

---

[1] One of the cases cited by Plaintiff, *Sosinsky v. Grant*, 6 Cal.App.4th 1548, 1569 (1992), involved the propriety of taking judicial notice and does not assist in resolving the collateral

Cal.App.4th 1407 (2007), which in turn quotes *Vandenberg v. Superior Court*, 21 Cal.4th 815 (1999):[2]

> [R]es judicata does not merely bar relitigation of identical claims or causes of action. Instead, in its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case.

Plaintiff also cites *Ritchie v. Konrad*, 115 Cal.App.4th 1275, 1290 (2004), which addressed renewal of a domestic violence protective order and held that an objective test governs before a protective order is renewed in contested cases and stated:

> [T]he trial judge ordinarily should consider the evidence and findings on which that initial order was based in appraising the risk of future abuse should the existing order expire.
>
> On the other hand, the trial court should not permit the restrained party to challenge the trust of the evidence and findings underlying the initial order ... This would contradict principles of collateral estoppel and undercut the policies supporting those principles. But this does not mean that the trial court should be prohibited from looking behind the order itself when evaluating whether that order, often three years old, should be extended another three years or even, as here permanently.

Here, Plaintiff argues the factors supporting application of collateral estoppel have been satisfied, including that Defendant

---

estoppel issue.
   [2]Defendant Twedt asserts that *Smith v. Exxon Mobil Oil Corp.* is an unpublished, uncitable decision. Although Plaintiff cited only the Westlaw citation, the case has been officially published as cited above.

4

Twedt had a full and fair opportunity to litigate against Plaintiff in state court the issues for which preclusion is sought. Plaintiff cites to the unpublished state Court of Appeal decision affirming the trial court injunction that rejected Twedt's arguments that denial of his requests for continuance to obtain counsel did not deny him due process. Plaintiff cites *Last Chance Water-Ditch Co. v. Heilbron*, 86 Cal. 1 (1890), as authority that a proceeding for injunctive relief, so long as embodied in a final order or judgment, may be the basis for claim or issue preclusion.

Defendants argue that the procedures applicable to California Code of Civil Procedure § 527.6 are expedited and self-contained. Citing *Nora v. Kaddo*, 116 Cal.App.4th 1026, 1028 (2004), Defendants contend that there is no full due process trial on the merits following the issuance of the injunction pursuant to Section 527.6 and the order and supporting facts should not be given preclusive effect.

The *Kaddo* Court addressed the propriety of a trial court's ruling on a Section 527.6 petition on the papers without taking testimony. In ruling that the decision was error, the Court of Appeal stated:

> This ruling deprived both parties of important rights that the statute expressly preserved to them ....
>
> '[T]he procedure for issuance of an injunction prohibiting harassment is self-contained. There is no full trial on the merits to follow the issuance of the injunction after the hearing provided by Code

5

>of Civil Procedure section 527.6, subdivision (d). That hearing therefore provides the only forum the defendant in a harassment proceeding will have to present his or her case. To limit a defendant's right to present evidence and cross-examine as respondents would have us to do would run the real risk of denying such a defendant's due process rights. ...' ....

Defendants also cite *Byers v. Cathcart*, 57 Cal.App.4th 805, 811 (1997). In *Byers,* the Court of Appeal held that a trial court's Section 527.6 order

>did not, and could not, finally determine the parties' respective rights and duties regarding use of the easement. The lack of finality of a section 527.6 order underscores that section 527.6 was never intended to provide an expedited procedure for resolving real property disputes ....
>
>Section 527.6 was enacted to provide an expedited procedure for preventing 'harassment' as defined ... The motivation for the statute was the was the experience of a young woman who was hounded by a male admirer who followed her, incessantly telephoned her, etc. ... The statute was designed to provide a quick and simple procedure by which this type of wholly unjustifiable conduct, having no proper purpose, could be enjoined. The statute is limited to protecting only those who have suffered 'substantial emotional distress' caused by conduct 'which serves no legitimate purpose.' (§ 527.6, subd. (b), defining 'harassment.') Nothing in the statute indicates that it was intended to supplement normal injunctive procedures applicable to cases concerning issues other than' harassment' as statutorily defined.
>
>...
>
>Normal injunctive procedures allow time for research and investigation, pleading and other motions if necessary, discovery and preparation, etc., followed by opportunity

for a full trial ....

> Section 527.6, by contrast, provides a quick and truncated procedure. Offsetting the truncated nature of the procedure is the limited scope of the antiharassment orders which can legitimately follow. Section 527.6 provides for temporary restraining orders to handle immediate problems, followed quickly by a court hearing on a limited-scope antiharassment injunction - normally with 15 days, but in no case more than 22 days even if time is extended for good cause. (§ 527.6, subds. (c) & (d).) This expedited and summary proceeding is subject to several limitations designed to confine it to its proper scope. One such limitation is that any injunction which results cannot exceed three years in duration. Section 527.6 hence does not allow for final resolution of disputed rights. Another limitation is that 'harassment' must be found by clear and convincing evidence before future conduct may be enjoined. (§ 527.6, subd. (d).) Another limitation is that a section 527.6 injunction may enjoin only 'harassment' as defined. (§ 527.6, subd. (b).) Conduct which serves a legitimate purpose is outside the definition of 'harassment' and cannot be enjoined pursuant to the summary procedures of section 527.6, even if such conduct might ultimately be enjoinable according to normal injunctive procedures after full development of the facts and law.

Defendants also cite *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1248-1249 (2005):

> A preliminary injunction is a *provisional* remedy, and the trial court 'possesses the inherent power to modify its preliminary injunction which is of a continuing or executory nature.' ... 'There is no inflexible rule as to the effect of the granting or denial of a preliminary injunction on subsequent litigation, but unless it appears that the court intended a final adjudication of the issue involved, a

7

> decision on an application for a preliminary injunction does not amount to a decision on the ultimate rights in controversy.'

Plaintiff complains that the equitable exception to application of the collateral estoppel doctrine was not raised by Defendants in opposition to her motions in limine, but by the Court *sua sponte* "in the absence of any record or specific data." Plaintiff cites *In re Perez*, 30 F.3d 1209, 1213 (9th Cir.1994), a decision involving whether to address an issue raised for the first time on appeal, wherein the Ninth Circuit commented:

> In normal adversarial litigation, neither the trial judge nor opposing counsel have the responsibility to raise issues a party fails to raise; if the affected party fails to object, the issue never comes before the court.

Plaintiff also cites *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 166 (9th Cir.1993): "[A] judge's participation in a case must never reach the point where it appears, or is even perceived to appear, that the judge is aligned with any party in the pending litigation."

Plaintiff's suggestion that the Court's ruling is the result of bias on the part of Defendants is misplaced. Before the Court at the hearing on August 27, 2007 was Plaintiff's second objection to the Court's ruling that the doctrine of collateral estoppel did not apply. Plaintiff moved for reconsideration of the denial of Plaintiff's motion for summary judgment. The motion in limine raised whether or not certain evidence should be admitted. The Court was required to rule on the evidentiary

8

issue presented by Plaintiff's motions in limine nos. 1 and 2. Plaintiff referred the Court to a case which discussed the equitable exception to the collateral estoppel doctrine.  As stated in open court and in the August 29 Order, quoting directly from the case, the Court did not believe the doctrine of collateral estoppel urged by Plaintiff applied, especially when the equities and circumstances of this case are considered. Because the Court  Court had already twice ruled that collateral estoppel did not apply, Plaintiff's contention that the Court's conclusion that the equities also preclude the application of the doctrine manifests bias for Defendants merely reflects Plaintiff's disagreement with the Court's rulings and unwillingness to accept any contrary interpretation of the law.

    Plaintiff seeks reconsideration of the Court's ruling that the interests of justice preclude application of the collateral estoppel doctrine.   Plaintiff cites Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction 2d § 4426:

> A final limitation on issue preclusion may be found in occasional statements that it 'should not be exercised in such a manner as to work an injustice.'  Such general statements should be approached with great caution.  The premise of preclusion itself is that justice is better served in most cases by perpetuating a possibly mistaken decision than by permitting relitigation.  If relitigation were permitted whenever it might result in a more accurate determination in the name of 'justice,' the very values served by preclusion would be quickly destroyed.

In California, collateral estoppel will not be applied "'if injustice would result or if the public interest requires that

relitigation not be foreclosed.'" *Rodgers v. Sargent Controls & Aerospace*, 136 Cal.App.4th 82, 90 (2006), quoting *Consumers Lobby Against Monopolies v. Public Utilities Com.*, 25 Cal.3d 891, 902 (1979). This ignores the concerns that most of the issues in each of Plaintiff's three claims were not presented to or decided by the state court; *i.e.*, violation of First, Fourth or Fourteenth Amendments; state civil rights acts; intimidation or coercion; whether Defendant Twedt acted with malice, oppression, or reckless disregard of Plaintiff's rights.

To the extent that the Court declined to apply the doctrine because of Plaintiff's claim for punitive damages against Defendant Twedt, Plaintiff contends that he has not found "a single state or federal decision in these United States holding that the prospect of punitive damages in subsequent litigation justifies an equitable exception to collateral estoppel." Plaintiff cites several decisions which she asserts have applied collateral estoppel to preclude parties from either seeking or defending punitive damages in subsequent litigation.

Plaintiff cites *Muegler v. Bening*, 413 F.3d 980 (9th Cir.2005). In *Muegler*, creditors had obtained a judgment for compensatory and punitive damages in an intentional fraud action against the debtor. The creditors then filed a complaint in federal bankruptcy court seeking determination of the nondischargeability of that damages award. The bankruptcy court granted summary judgment for the creditors, ruling that the debtor was estopped from relitigating the issue of fraud. The

10

Ninth Circuit affirmed the bankruptcy court ruling.  *Muegler* does not discuss the equitable exception to application of the doctrine of collateral estoppel.  *Muegler* is wholly distinguishable, as the issue of punitive damages was actually and finally litigated in the prior intentional fraud case.

Plaintiff also cites *In re Cantrell*, 329 F.3d 1119 (9th Cir. 2003).

In *In re Cantrell*, creditors filed an action in state court alleging that Cantrell had breached fiduciary duties while serving as an officer of a corporation, seeking compensatory and punitive damages.  Default judgment was entered in favor of the creditors and against Cantrell awarding compensatory and punitive damages.  The judgment creditors filed an adversary proceeding in Cantrell's Chapter 7 proceeding seeking to except the judgment from discharge.  The bankruptcy court granted the creditors' motion for summary judgment and denied Cantrell's cross-motion for summary judgment on the collateral estoppel effect of the default judgment.  The BAP reversed the bankruptcy court, concluding that Cantrell had not been personally served or received actual notice of the state court action, and further concluding that Cantrell, in his role as a corporate officer was not a fiduciary within the meaning of 11 U.S.C. § 523(a)(4).

The Ninth Circuit reversed the BAP's holding on collateral estoppel because Cantrell had received actual notice of the state court action and because the record in the state court action established that the state court's award of punitive damages

could only have been based Cantrell's fraudulent withdrawal and use of corporate assets for his own benefit. 329 F.3d at 1125. The Ninth Circuit affirmed the BAP's ruling that Cantrell was not a fiduciary within the meaning of Section 523(a)(4), concluding that Cantrell was entitled to summary judgment on the non-dischargeability claim. *Cantrell* does not discuss the equitable exception to the collateral estoppel doctrine and the issue of punitive damages was actually and finally litigated in the prior state court proceeding before it was given preclusive effect in the bankruptcy case.

Plaintiff cites *Peterson v. State of California Dept. of Corrections*, 451 F.Supp.2d 1092, 1110 (E.D.Cal.2006). In *Peterson*, the Court held:

> The issue of whether Plaintiff's promotion was racially motivated was decided in the SPB proceeding. This is the same issue that would need to be determined in a section 1981 claim, which requires intentional discrimination by the defendant. Consequently, Plaintiff's section 1981 claim is also barred by collateral estoppel.

There is no discussion in *Peterson* of the equitable exception to the collateral estoppel doctrine and, contrary to our case, the exact same issue as involved in the federal proceeding, i.e., intentional discrimination based on race was actually litigated in the prior proceeding.

Finally, Plaintiff cites *Garcia v. Los Banos Unified School Dist.*, 418 F.Supp.2d 1194, 1211-1212 (E.D.Cal.2006). In *Garcia*, the Court ruled:

12

> Here, the complaints that Plaintiff submitted to Defendant LB were essentially complaints by Plaintiff against Defendant Heid; thus, the same parties are involved. The conduct covered by the complaint included all the factual matters covered by the instant claim, including Heid's yelling and threats in October 2002, retaliation for complaining about the yelling, Heid's November 2002 comments regarding wiping Plaintiff's ass, retaliation for complaining regarding that incident, the evaluations, screaming, and the sexual harassment in May 2003 ....
>
> In summary, the Court concludes that Plaintiff's failure to obtain reversal of the findings of the Board by way of administrative mandamus bars Plaintiff's FEHA action against Heid with respect to the conduct encompassed by the present FEHA claim against Heid.

*Garcia* does not involve the equitable exception to the collateral estoppel doctrine, but rather involved identical claims in both the state and federal proceedings.

Plaintiff's contention that the cited case law negates application of the equitable exception to the collateral estoppel doctrine when punitive damages are sought in the subsequent proceeding is unsupported. Here Plaintiff seeks to use collateral estoppel offensively. In *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330 (1979), the Supreme Court commented:

> A second argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable.

Plaintiff argues that, even if the prospect of punitive damages is a valid equitable exception, "the factual data and

regarding the likelihood of punitive damages, and not merely the theoretical possibility of unspecified punitive damages, must be considered." Plaintiff's counsel, Mr. Little, asserts that he has never obtained more than $15,000 in punitive damages against a police officer in this Court, "and only in far more egregious cases where there were, unlike here, catastrophic injuries."
Plaintiff contends:

> Is the Court really saying that the possibility that Twedt might realistically incur up to $15,000 in punitive damages outweighs the inequity of plaintiff's having to re-litigate facts that cost her more than $60,000 to establish in state court and nearly 1,000 legal hours to seek to have applied in this forum?  Further, is the Court saying that this mere possibility justifies the expenditure of tens of thousands of taxpayer dollars so that these redundant proceedings may proceed in federal court?  No reasonable balancing of the equities supports applying an exception to collateral estoppel in this instance.

Plaintiff further contends that "it is unfair to minimize the stakes of the underlying state proceeding in order to make it seem so different in magnitude than the current action." In the state court proceeding, Defendant Twedt was facing the potential loss of the right to carry a firearm, which could have endangered his ability to continue working as a police officer and he had to undergo a court-ordered psychological evaluation prior to being permitted to retain a limited right to possess firearms. Plaintiff contends Twedt had more at stake in the state proceeding than he does in this federal action and "any distinction between the two provides no justification for

14

1  applying an equitable exception to collateral estoppel."

2  Plaintiff again represents that he intends to dismiss the
3  federal claims against the City of Fresno if the Court applies
4  collateral estoppel to Defendant Twedt.

5  Plaintiff, citing *People v. Sims,* 32 Cal.3d 468, 486-487
6  (1982) and *Miller v. Superior Court*, 168 Cal.App.3d 376, 381-384
7  (1985), contends that the City of Fresno is collaterally estopped
8  to relitigate the facts established in the state court action
9  because the City of Fresno is "not merely in privity vis á vis
10 the state proceeding but are the same exact parties."

11 In *People v. Sims*, the Supreme Court held:

> [T]he district attorney's office, which represents the party to be estopped, and the County, the unsuccessful party in the prior litigation, are 'sufficiently close' to warrant applying collateral estoppel. Both entities are county agencies that represented the State of California at the respective proceedings. The district attorney's office represents the State of California in the name of the 'People' at criminal prosecutions ... At fair hearings, the county welfare department act [sic] as the 'agent' of the state. '[T]he courts have held that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government.

21 32 Cal.3d at 487.

22 In *Miller v. Superior Court*, the plaintiff, a victim of a
23 rape committed by a police officer who was convicted of the
24 criminal charge of rape, filed a civil action for damages arising
25 out of the rape in state court against the police officer and the
26 City which employed the officer. The plaintiff petitioned for a

15

writ of mandate directing the Superior Court to vacate its orders denying her motion for partial summary judgment on the issue of rape in the underlying civil action against the city.  The Court of Appeal held in pertinent part:

> The modern view is stated in *Lynch v. Glass, supra,* 44 Cal.App.3d 943, at pages 947-948: 'Three factors may favor the application of collateral estoppel in a given case even though the precise identity of parties and issues may be lacking.  The principle may be invoked to protect against vexatious litigation ..., to further the finality of litigation in which public interests are involved ..., or to promote the stability of adjudications in prior criminal actions ... The circumstances must also have been such that the nonparty should reasonably have been expected to be bound by the prior adjudication.'  Finally, in *Clemmer v. Hartford Insurance Co., supra*, 22 Cal.3d 865, the Supreme Court said, 'Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation ....'
> ....
>
> We have found the issue of rape, finally decided in the prior criminal case, to be identical with the rape issue presented in the instant civil litigation, and that City, against which collateral estoppel is asserted, was in privity with the People of the State of California, party plaintiff to the prior criminal case.  But in addition, considerations of public policy, principles of equity, established precedent, finality of criminal adjudications and a balancing of the rights of City against the need for precluding City from relitigating the issue of fact, impel us to the conclusion that City is precluded from retrying the essential

issue of rape.  The need for applying the principle of preclusion against City is reflected in a variety of circumstances.  If the actions were severed, repetitive litigation would result, for two trials arising out of the same facts would be required; in a joint trial, to allow City to relitigate the rape issue would not only result in a waste of judicial time and resources, but permit vexatious litigation by again exposing petitioner to a retrial of the rape issue with its attendant humiliation and expense both to the parties and to the public.  Further, in the sense that the interest in prosecuting Schroyer was not only to bring a police officer who had breached a substantial public trust to justice but to protect other members of the public from any future illegal conduct while on duty, we, as in *Drinkhouse* [there the public interest was the validity of deeds to land], are 'dealing with a *public interest*' ..., i.e., a public trust, the integrity of a police force that serves a large city and the protection the members of the public have a right to expect which in *Drinkhouse* justified invocation of collateral estoppel to further final litigation in which public interests are concerned.  But the area of most of our concern lies in the necessity for stability of adjudication in prior criminal actions.  If City is permitted to challenge the critical fact of Schroyer's rape of petitioner, and if by reason of failure of proof or otherwise on the part of petitioner the fact was not proved, several anomalies unsettling to public confidence in the judicial process would appear.  First, there would be presented the repugnancy that a police officer would have been convicted, jailed and removed from office for forcible sexual conduct which in a civil suit would be found not to have occurred.  Second, not only would inconsistent judgments threaten public confidence in our judicial system and undermine the integrity of our system of justice but would also have a devastating effect on Schroyer's concept of justice as he serves out his term in state prison, suffers removal from office and possible denial of pension, not to mention loss of reputation.

**168 Cal.App.3d at 385-386.[3]**

Plaintiff states that "the only evidence she intends to present to prove the facts found by Judge Putnam were those findings themselves."  Plaintiff represents:

> Indeed, plaintiff intended to read verbatim from said ruling to advise the jury of the various findings set forth [in Judge Putnam's ruling].  Thus, without the requested application of collateral estoppel, plaintiff lacks any evidence to proceed to trial or even make it past the opening statement phase of the case.  Therefore, the plaintiff requests, if this Court's tentative [sic] ruling becomes its final ruling, that it be certified for immediate appeal or that the Court enter a directed verdict or involuntary dismissal based on the plaintiff's proposed opening statement.

Upon reanalysis in open court on September 5, 2007, the parallels with *Miller* are persuasive.  Except for the City, the parties are identical.  The judgment in the Section 527.6 case is final.  There is no justifiable reason to retry the underlying harassment and annoyance case.  However, even affording collateral estoppel effect to the factual (not legal) findings by the state court, none of the elements of the claims in this case were decided.

As to Defendant Brian Twedt, the motion for reconsideration is GRANTED.  As to the City of Fresno, the motion for reconsideration is DENIED.  The Court has by separate ruling

---

[3]The issue of whether the City was vicariously liable for civil damages for the officer's rape was discussed in *Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991).  That issue is not presently before the Court.

1 **formulated the form in which the findings have been presented to**
2 **the jury with appropriate admonitions as to the City of Fresno.**
3 IT IS SO ORDERED.
4 **Dated:   September 12, 2007**              /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE